**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MERRILL PRIMACK d/b/a CREDIT LIFELINE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 08-CV-4539 |
| | ) | |
| PEARL B. POLTO, INC., PEARL B. POLTO, | ) | |
| and AUTHORS & ARTISTS PUBLISHERS | ) | Judge Robert M. Dow, Jr. |
| OF NEW YORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion to dismiss of Defendants Pearl B. Polto, Inc. and Pearl B. Polto ("the Polto Defendants").[1] The Polto Defendants seek dismissal of Plaintiff's complaint for lack of personal jurisdiction [10] pursuant to Federal Rule of Civil Procedure 12(b)(2). Having carefully reviewed the briefs [11, 23, 24], the Court grants the motion [10] and dismisses both Polto Defendants from this case for lack of personal jurisdiction.

**I.     Background**

Plaintiff Merrill Primack ("Merrill"), d/b/a Credit Lifeline, a resident and citizen of Chicago, initiated this action under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, against Defendants Pearl B. Polto Inc. ("Polto Inc.") and Pearl B. Polto, individually ("Ms. Polto"). Plaintiff subsequently filed his operative First Amended Complaint ("FAC") adding Defendant Authors & Artists Publishers of New York, Inc. ("AAPN"). Plaintiff seeks to recover for injuries allegedly sustained as a result of Defendants' use of the mark "Credit Lifeline," including publishing, advertising and selling online a book entitled *Credit Lifeline*. Plaintiff

---

[1] The third Defendant, Authors & Artists Publishers of New York, Inc., has neither answered nor appeared.

alleges that the use of "Credit Lifeline" by Defendants' business constitutes trademark dilution, trademark infringement, and unfair competition under federal and Illinois state law. The Polto Defendants filed a motion to dismiss the original complaint for lack of personal jurisdiction. After Plaintiff filed his FAC, the parties agreed that the previously filed motion to dismiss would be deemed to be directed at the FAC and the parties completed briefing on the motion.

According to the complaint, Plaintiff has used the "Credit Lifeline" mark in connection with a consulting business in the field of commercial lending services since December 2001. FAC ¶ 8. In 2008, Plaintiff registered "Credit Lifeline" as a trademark with the United States Patent and Trademark Office. *Id.* at ¶ 9. Plaintiff has extensively advertised and promoted "Credit Lifeline." *Id.* at ¶ 10.

Polto Inc. is a Pennsylvania corporation which does not have offices, employees, property, physical non-digital advertising, sales or agents in Illinois. Declaration of Pearl B. Polto ("Polto Decl.") ¶¶ 2-3. Ms. Polto resides in Philadelphia, Pennsylvania. *Id*. at ¶ 1. She has authored several books on consumer-credit counseling including the book, *Credit Lifeline*, published by AAPN in 2002. *Id*. at ¶¶ 4-5. In addition to publishing *Credit Lifeline*, AAPN operates a website to advertise and sell Ms. Polto's book *Credit Lifeline* among other materials it publishes. *Id.* at ¶ 6. Between 2005 and October 2008, AAPN sold approximately 30 copies of *Credit Lifeline*. *Id.* at ¶ 7. AAPN has its principal place of business in Dryden, NY. FAC ¶ 6.

Ms. Polto traveled to Illinois on one occasion. Polto Decl. ¶ 8. In 2006, she flew to Chicago to conduct a workshop on consumer credit. *Id*. She waited for one hour at a Chicago-area church, the site where the workshop was supposed to take place, and when no one showed up to attend the workshop, she flew back to Philadelphia. *Id.*

## II. Analysis

### A. Legal Standard on Motion to Dismiss for Lack of Personal Jurisdiction

An action against a party over whom the Court lacks personal jurisdiction must be dismissed. See Fed. R. Civ. P. 12(b)(2). Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. See *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits. See *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004).

### B. Personal Jurisdiction

In federal question cases, personal jurisdiction analysis has both a constitutional and statutory element. The Court must determine that (1) haling the defendant into court accords with the Due Process Clause of the Fifth Amendment; and (2) the defendant is amenable to service of process from the court. *Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F. Supp. 1316, 1318 (N.D. Ill. 1996) (citing *United States v. De Ortiz*, 910 F.2d 376, 381-382 (7th Cir. 1990); *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)). Due process in federal question cases requires that each party have sufficient contacts with the United States as a whole rather than any particular state. See *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001).

If the defendant is exposed to the jurisdiction of the United States, as Ms. Polto and Polto, Inc. clearly are in this case, the question becomes whether the federal court has been authorized to exert the full power of the nation. *ISI Int'l, Inc*, 256 F.3d at 552. To answer this question, the court looks to the applicable federal statute – in this case, the Lanham Act. See

*Omni Capital Int'l*, 484 U.S. at 104. The Lanham Act does not permit nationwide service of process. See, *e.g.*, *ISI Int'l, Inc.*, 256 F.3d at 551. When the federal statute at issue does not provide for nationwide service, the statutory basis for jurisdiction generally is provided by Rule 4(k)(1)(A) which ties jurisdiction to the forum state's long-arm statute. See *Janmark v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997); see also *Digisound-WIE, Inc. v. Bestar Techs., Inc.*, No. 07 C 6535, 2008 WL 2096505 (N.D. Ill. May 16, 2008).

Under Illinois law, a court may exercise personal jurisdiction over a non-resident through operation of the Illinois long-arm statute. See 735 ILCS § 5/2-209. That statute extends personal jurisdiction over claims that arise out of a number of enumerated actions and activities, including transacting any business in Illinois. See 735 ILCS § 5/2-209(a)(1). In addition, personal jurisdiction is proper against any corporation doing business within Illinois. 735 ILCS § 5/2-209(b). Finally, the long-arm statute's "catch-all" provision authorizes courts to exercise jurisdiction on any basis permitted by the Illinois or federal Constitutions. 735 ILCS § 5/2-209(c).

Because the Illinois long-arm statute authorizes personal jurisdiction to the fullest constitutional limits, the three inquiries above "collapse into two constitutional inquiries — one state and one federal." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Moreover, the Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction" (*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003)), despite a cautionary pronouncement in a 1990 Illinois Supreme Court decision suggesting that the state and federal standards may not be co-extensive. See *Rollins v. Elwood*, 141 Ill. 2d 244, 274-275 (1990); see also *Hyatt Int'l*, 302 F.3d at 715 (acknowledging *Rollins*, but noting that even if hypothetically

the Illinois state and federal due process standards might diverge, no basis for such a divergence existed in the case before it). In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice. See *Hyatt*, 302 F.3d at 715; *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 919 (N.D. Ill. 2008); *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 357 Ill. App. 3d 381, 388 (1st Dist. 2005) (noting that the court had not located any post-*Rollins* cases finding that federal due process requirements had been met where Illinois due process requirements were not).

The federal test for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" requirement of the minimum contacts standard ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In addition, the Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-416

(1984); see also *Hyatt Int'l*, 302 F.3d at 713. General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Heliocopteros*, 466 U.S. at 416; *Hyatt Int'l*, 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.2d at 713. On the other hand, specific jurisdiction is more limited and a plaintiff in such circumstances must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Id.*

Finally, even if a court finds that the minimum contacts standard and the specific jurisdiction requirement have been met, a court's due process inquiry does not end. The court must also consider whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "Thus, courts in 'appropriate cases' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the interstate judicial system's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). These considerations are sometimes used to establish the reasonableness of jurisdiction in lieu of a strong showing of minimum contacts. *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

Here, Plaintiff does not allege that the Polto Defendants have "continuous and systematic" contacts with Illinois sufficient to justify general jurisdiction, nor would the relevant

6

facts support such a contention. See *Hyatt Int'l*, 302 F.3d at 713 (explaining that where a defendant's contacts with the forum state are more limited, the plaintiff's only option is to establish specific jurisdiction). Therefore, if jurisdiction is to be found, it will be on the basis of specific jurisdiction. Initially, Plaintiff argues that (i) Ms. Polto's trip to Chicago in 2006 is sufficient to establish minimum contacts and (ii) because the controversy "arises out of" that contact, specific jurisdiction exists. The Polto Defendants counter that no one attended the seminar, Ms. Polto did not sell any books while in Chicago, no registration fees were collected, nor was there any evidence that she would have collected fees if the workshop had gone forward. The Polto Defendants also note that they were unaware of Plaintiff's use of the mark at the time and that when nobody showed up at her workshop, Ms. Polto did not attempt to solicit other business in Illinois; rather, she left the state that day.

Although a single visit to a forum can be sufficient to provide a court with specific jurisdiction, it remains a plaintiff's burden to establish its existence. The gravamen of Plaintiff's argument is that the Polto Defendants established minimum contacts in Illinois under the "effects test" (also referred to as the "effects doctrine") because their actions caused Plaintiff to suffer harm in Illinois. The effects test was established in *Calder v. Jones*, 465 U.S. 783, 789 (1984), which held that the state in which the victim of defamation lived had jurisdiction over the victim's defamation suit. The defendants in *Calder*, both residents of Florida, were involved in writing an allegedly libelous article for the *National Enquirer* about the plaintiff, a resident of California. *Id*. at 784-786. The Court characterized defendants actions as "intentional, and allegedly tortious, actions [which] were expressly aimed at California" and were not "mere untargeted negligence." *Id*. at 789. The defendants knew that the article would have an adverse impact upon the plaintiff, the brunt of which would be felt largely in California. *Id*. at 789-790.

7

The Seventh Circuit applied similar reasoning and extended the effects test to the trademark context in *Indianapolis Colts v. Metro. Baltimore Football Club, L.P.*, 34 F.3d 410 (7th Cir. 1994). That case involved a trademark dispute between the Colts of the National Football League, and the recently created Baltimore CFL Colts. *Id.* at 411. The only activity of the Baltimore team undertaken or planned in Indiana at that point was the broadcast of its games, which would be shown nationwide. *Id.* Nonetheless, the Court concluded that the Indianapolis Colts' trademarks would have effects in Indiana and therefore jurisdiction was proper under *Calder*. *Id.* at 411-412.

Plaintiff relies on the general proposition from this line of cases that where the injury to intellectual property is incurred, jurisdiction is proper. See *Bunn-O-Matic Corp. v. Bunn Coffee Service Inc.*, 46 U.S.P.Q. 2d 1375 (C.D. Ill. 1998); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000). However, in the Court's view, application of the effects test is not as simple as Plaintiff suggests in that harm to the plaintiff in the forum is not enough to establish jurisdiction. The effects test only allows a court to exert personal jurisdiction over a defendant if they: (i) commit intentionally tortious actions; (ii) which are expressly aimed at the forum state; (iii) which cause harm to the plaintiff in the forum state which the defendant knows is likely to be suffered. See *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 835 (citing *Calder*, 465 U.S. 783). These further requirements of knowledge of and intent to harm plaintiff in the form were satisfied in the cases relied on by Plaintiff. In *Indianapolis Colts*, the court laid out the history of the litigation, leaving no doubt that the defendant knew of the similarly named plaintiff and its mark. *Indianapolis Colts*, 34 F.3d at 411. Despite that knowledge, games involving the infringing trademark were broadcast into the plaintiff's forum state. *Id.* at 411. Thus, the defendant knew that its actions would result in harm in the plaintiff's state. Similarly,

8

the defendants in *Calder* knew that the plaintiff resided in California before they wrote the article. And in *Euromarket Designs* there was no question that the defendants were aware of the plaintiff's trademark, that they had intentionally directed their actions toward Illinois, and that they knew that the plaintiff would suffer harm in Illinois. *Euromarket Designs*, 96 F. Supp. 2d at 836. Finally, in *Bunn-O-Matic*, the defendant agreed that the court "should assume for purposes of this motion to dismiss that Defendant intended to injury Plaintiff in Illinois." *Bunn-O-Matic*, 46 U.S.P.Q 2d at 1377.

Here, by contrast, there are no allegations that the Polto Defendants were aware of Plaintiff's mark and expressly aimed their allegedly tortious actions at Illinois or knew that Plaintiff would suffer harm in this forum. Plaintiff alleges that the Polto Defendants began using the mark "Credit Lifeline" in commerce in December 2001, and that the initial, continued, and possible future use of the mark causes him harm in Illinois. But harm by itself is insufficient; targeted harm is required, and here Plaintiff does not argue that the Polto Defendants had the requisite knowledge or intent. The Polto Defendants maintain that they were not aware of Plaintiff's mark, nor could they have been before it was registered in 2008. Plaintiff gives the Court no reason to think otherwise. At the earliest, the Polto Defendants could have been on "constructive notice" of the mark in May of 2008 when Plaintiff registered "Credit Lifeline."[2] *Credit Lifeline*, however, was published six years before, and Ms. Polto's visit to Illinois was two years prior to, the date that Plaintiff even registered the mark. Because these actions took place before the Polto Defendants were aware of the mark (or even could have been based on its registration), there is no reason that those Defendants would expect to be haled into court in Illinois. Finally, there is no indication that any of the thirty copies of *Credit Lifeline* were sold in

---

[2] One court in this circuit recently rejected the argument that registration creates "constructive knowledge" of the mark. See *Novelty, Inc. v. RCB Distributing, Inc.*, 2008 WL 2705532, at *4 (S.D. Ind. July 9, 2008).

9

Illinois or to Illinois residents. Under similar facts, another court in this circuit recently refused to expand the effects test by relaxing the requirement of intentional harm in the forum state. See *Novelty, Inc. v. RCB Distributing, Inc.*, 2008 WL 2705532, at *3-4 (S.D. Ind. July 9, 2008) (noting that "[w]ithout intentional actions causing foreseeable harm in the forum state, there can be no personal jurisdiction under the effects test.") To permit specific jurisdiction to be premised solely on unintended harm to a plaintiff would eviscerate any limits to personal jurisdiction in the intellectual property context. There is no evidence that the Polto Defendants knew of Plaintiff's mark or intended to harm Plaintiff in Illinois, and therefore the effects test does not support jurisdiction in this instance.

The website offering *Credit Lifeline* for sale likewise cannot independently provide this Court with jurisdiction. See *Linehan v. Golden Nugget*, 2008 WL 4181743 (N.D. Ill. Sept. 5, 2008). In *Linehan*, a resident of Chicago sought to recover injuries in Illinois from the Golden Nugget Corporation, which owned the hotel where she slipped and fell in Las Vegas. *Linehan*, 2008 WL 4181743, at *1. The plaintiff claimed defendants, through their advertising, including a website, specifically targeted Illinois residents. *Id.* The court held that defendants' operation of an interactive website was not an adequate basis for the exercise of specific jurisdiction under a "minimum contacts" analysis. *Id.* at *6. Plaintiff unsuccessfully attempts to distinguish this case from *Linehan*, pointing to Ms. Polto's visit to Chicago in 2006 and the fact that the claim here involves trademark infringement. Neither argument is persuasive.

Finally, even if Plaintiff were able to establish minimum contacts and show that the alleged incident arose out of or related to those contacts, Plaintiff offers no persuasive reason why an exercise of personal jurisdiction by this Court would comport with "fair play and substantial justice." See *Int'l Shoe*, 326 U.S. at 320; *Burger King,* 471 U.S. at 477. Polto, Inc. is

incorporated in Pennsylvania, where Ms. Polto also resides. Thus, there would be a burden on Defendants to travel to Illinois for judicial proceedings. This burden seems disproportional to the amount of harm alleged for trademark dilution and infringement, as well as unfair competition, especially given that AAPN sold only 30 copies of *Credit Lifeline*. While Illinois may have an interest in adjudicating disputes involving alleged trademark infringement of Illinois companies, it does not seem that Illinois has a strong interest in adjudicating this dispute based on Defendants' limited commercial activity. The Polto Defendants, having sold only thirty copies of the *Credit Lifeline* book in the past three years and having failed to attract any participants for a seminar in Chicago, do not represent a significant competition to the Plaintiff, nor do they represent a source of confusion to potential customers of Plaintiff's business. Now that Plaintiff has registered the trademark "Credit Lifeline" (in 2008), Defendants have notice that the "Credit Lifeline" mark belongs to Plaintiff. Plaintiff also may be able to pursue a claim in Pennsylvania or New York, if they so choose. But, for all of the reasons stated above, the Court concludes that Plaintiff cannot establish that the assertion of personal jurisdiction over the Polto Defendants in Illinois would be fair and reasonable.

In sum, because the Court concludes that the Polto Defendants do not have sufficient minimum contacts with Illinois and, as such, have not purposely availed themselves of the benefits and protections of the laws of Illinois by directing their business activities at residents within the state, Plaintiff cannot satisfy the minimum contacts standard. In addition, even if there were sufficient minimum contacts, it would not be fair or reasonable to require the Polto Defendants to defend this claim in Illinois. Accordingly, Plaintiff has failed to establish that personal jurisdiction over Polto, Inc. and Ms. Polto and the claims against those Defendants must be dismissed.

### III. Conclusion

Plaintiff has failed to establish that this Court has personal jurisdiction over Defendants Polto Inc. and Ms. Polto. Therefore, their motion to dismiss [10] is granted.

Dated: July 8, 2009

_____
Robert M. Dow, Jr.
United States District Judge